ROGERS, J., delivered the opinion of the court in which GIBBONS, J., joined, and SILER, J., joined in the result. SILER, J. (pp. 435-36), delivered a separate concurring opinion.
OPINION
ROGERS, Circuit Judge.
This case involves an issue that was left open by the Supreme Court in United States v. Knights, 534 U.S. 112, 120 n. 6, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001): Whether, under the Fourth Amendment, a probationer whose probation order contains a search condition may be subjected to a search in the absence of reasonable suspicion. Brandon Tessier pled guilty to a federal child-pornography charge but reserved the right to challenge the denial of his motion to suppress evidence of child pornography that was found during a search of his residence. The parties agree that the search was without reasonable suspicion. At the time of the search, Tes-sier was on probation for a 2011 Tennessee felony conviction for sexual exploitation of a minor. Tessier’s probation order contained, among other requirements, the following “standard” search condition that applies to all probationers in Tennessee: “I agree to a search, without a warrant, of my person, vehicle, property, or place of residence by any Probation/Parole officer or law enforcement officer, at any time.” The district court’s well-reasoned opinion correctly denied Tessier’s motion to suppress under the Fourth Amendment totality-of-the-circumstances reasonableness approach employed by the Supreme Court in Knights. United States v. Tessier, No. 3:13-00077, 2014 WL 4851688 (M.D.Tenn. Sept. 29, 2014). We adopt the district court’s reasoning, which fully supports upholding the search and which does not need to be repeated here.
Tessier’s arguments on appeal do not detract from the district court’s analysis. Tessier incorrectly cites United States v. Henry, 429 F.3d 603 (6th Cir.2005), for his contention that we “[have] used reasonable suspicion as the appropriate touchstone for this analysis.” In Henry, we addressed whether a search that was made pursuant to a Kentucky Department of Corrections policy was constitutional by applying the two-step inquiry set out in Griffin v. Wisconsin, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) [1] first, whether the state policy is reasonable under the Fourth Amendment, and, second, whether the search satisfied the requirements of the policy. Henry, 429 F.3d at 608 (citing *434 United States v. Loney, 331 F.3d 516, 520 (6th Cir.2003)). We upheld the Kentucky policy, which permitted an officer to conduct a warrantless search only if the officer had reasonable suspicion that the search may produce evidence of a violation of probation. Id. at 608-09. We then held that the search was unconstitutional because the officers did not have reasonable suspicion and therefore did not satisfy the requirements of the Kentucky policy. Id. at 614. We also explained that the search could not be justified by the search condition contained in the defendant’s probation order, because the purpose of the search was to verify the defendant’s place of residence and the search condition only permitted searches when the defendant’s probation officer had reason to believe that the defendant had “illegal drugs, alcohol, volatile substance, or other contraband.” Id. at 615. Thus, Henry stands for the propositions that a state policy that requires an officer to have reasonable suspicion in order to search a probationer for violations of probation is reasonable under the Fourth Amendment and that a search cannot be justified by a search condition in a probation order when the search falls outside of the terms of the condition. Henry does not address the issue here, which is the propriety of a suspicionless search made pursuant to a search condition in a probation order that permits searches for any purpose.
Tessier also inaccurately states that a majority of other circuits hold that the Fourth Amendment requires at least reasonable suspicion for probationer home searches. In fact, none of the cases cited for the proposition so holds. Instead, the cases mostly either uphold home searches where there was reasonable suspicion, United States v. Graham, 553 F.3d 6, 18 (1st Cir.2009), United States v. Carter, 566 F.3d 970, 970-75 (11th Cir.2009), United States v. Tucker, 305 F.3d 1193, 1201 (10th Cir.2002), or uphold less invasive “home visits” where there was no reasonable suspicion, United States v. LeBlanc, 490 F.3d 361, 370 (5th Cir.2007), United States v. Reyes, 283 F.3d 446, 462 (2d Cir.2002). Cases upholding searches may imply by negative inference that the searches might not have been upheld in different circumstances, but such inferences are inherently dicta. See, e.g., Graham, 553 F.3d at 18 n. 7 (recognizing that its decision did not address whether a suspicionless search would have violated the Fourth Amendment). The Third Circuit case of United States v. Baker, 221 F.3d 438 (3d Cir.2000), is also consistent with our holding because its analysis was limited to Pennsylvania law. In that case the Third Circuit considered whether, as a matter of Pennsylvania law, the Pennsylvania standard consent-to-search form signed by all parolees requires police officers to have reasonable suspicion before they may search a parolee. Id. at 440. The court held that the Pennsylvania Supreme Court would construe the form as implicitly requiring searches to be based on reasonable suspicion, and that the suspicionless search of the defendant’s trunk was therefore outside the scope of the consent form. Id. at 448-49. Baker, which was decided without the benefit of Knights and Samson, does little to further Tessier’s arguments. It was decided on the basis of a consent theory, which Tessier argues should not apply (and which we do not address because the search was reasonable under the general Fourth Amendment totality-of-the-circumstanees approach). Additionally, the Tennessee Supreme Court has indicated that it views the Tennessee standard search condition as permitting suspicion-less searches, see State v. Turner, 297 S.W.3d 155, 167 n. 12 (Tenn.2009); therefore, Baker’s approach of construing search conditions in state probation orders *435 in line with the state high court’s interpretation of their meaning is unfavorable to Tessier.
Additionally, in a supplemental citation made pursuant to Federal Rule of Appellate Procedure 28(j), Tessier cites State v. Carman-Thacker, No. M2014-01859-CCA-R3-CD, 2015 WL 5240209 (Tenn.Crim.App. Sept. 8, 2015). In reversing the trial court’s denial of a probationer’s motion to suppress because the search was not supported by reasonable suspicion, the Carman-Thacker court cited Knights for the proposition that “[w]hen a person has signed a probation agreement providing written consent for a warrantless search of the person’s residence, such a search may be conducted if reasonable suspicion for the search exists.” Id. at *5. However, Knights stood for no such thing; Knights held that reasonable suspicion is sufficient to uphold a search of a probationer who is subject to a search condition but left open the question of whether reasonable suspicion is required to search a probationer who is subject to a search condition. 534 U.S. at 120 n. 6, 122 S.Ct. 587. The Carman-Thacker court’s reasoning is therefore unpersuasive.
Finally, as in Knights, 534 U.S. at 116-18, 122 S.Ct. 587, it cannot be argued that the suspicionless search in this case did not serve legitimate law enforcement and/or probationary purposes. We do not address the question of whether a search of a probationer’s home that has no legitimate law enforcement or probationary purpose — such as a search with no purpose other than to harass the probationer— would be reasonable under the Fourth Amendment.
The judgment of the district court is affirmed.

. Griffin governed our inquiry in Henry because the search was made pursuant to a state policy, but Knights governs our inquiry here because the search was made pursuant to a condition of probation. Knights, 534 U.S. at 117-18, 122 S.Ct. 587.